Patricia Kirtley Wells (#013905)
Kirtley Wells Law Office
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 264-7424
E-Mail: tk@kwlolaw.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc Fredrics,<br><br>      Plaintiff,<br><br>v.<br><br>City of Scottsdale,<br><br>      Defendant. | **No.**<br><br>**COMPLAINT**<br><br>**(Demand for Jury Trial)** |

Plaintiff Marc Fredrics, for his claims for relief against Defendant alleges:

## Nature of This Action

1. This is an action under Title I of the Americans with Disabilities Act of 1990 as amended by the ADA Amendments Act of 2008 and Title I of the Civil Rights Act of 1991 against Defendant City of Scottsdale ("Scottsdale") to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Marc Fredrics ("Marc" or "Plaintiff"). As stated with greater particularity below, Defendant City of Scottsdale ("Scottsdale") discriminated against Marc Fredrics, an individual with disability, by failing to make reasonable accommodations for his disability and terminating his employment because of his disabilities and/or perceived disability.

2. This is also an action for relief from City of Scottsdale's wrongful and willful interference with Plaintiff's right to take leave pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, in violation of the FMLA including wrongful termination. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §§ 1367(a). ADA

3. Plaintiff seeks injunctive relief and damages, including lost wages and benefits, front pay, compensatory and general damages, plus interest and reasonable attorneys' fees and costs for Defendant's violations of his rights as stated with greater particularity below.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of the complaint and the parties pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

5. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff's claims occurred in this District.

## Parties

6. Plaintiff, Marc Fredrics at all relevant times was a resident of Maricopa County in this Judicial District.

7. City of Scottsdale at all times relevant to this complaint, conducted business and continues to conduct business in Scottsdale, AZ.

8. City of Scottsdale employs greater than 500 employees and is a covered employer as defined by the ADA section 101(2), 42 U.S.C. § 12111(2).
and Title VII of the Civil Rights Act of 1964.

9. At all relevant times, City of Scottsdale has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

10. Scottsdale employed more than 50 employees during each working day during each of 20 or more calendar workweeks in 2018 and 2019.

11. In the twelve months prior to seeking medical leave and his eventual termination, Marc worked for Scottsdale for more than 1,250 hours.

12. More than one hundred and eighty days (180) days prior to the institution of this lawsuit, Marc filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging City of Scottsdale discriminated against him because of his disability.

13. All conditions precedent to the institution of this lawsuit has been fulfilled.

## General Allegations

14. Marc worked full-time at the City of Scottsdale, Arizona from May 5, 2014 until he was unlawfully terminated on September 9, 2019.

15. At the time of his termination Marc was a Liability Adjuster in Scottsdale's Risk Management Davison which was part of the City Attorney's Office. His job duties involved performing all aspects of general liability, property and automobile claims administration and adjusting for the City of Scottsdale.

16. During his time at Scottsdale, Marc earned the respect of his co-workers and supervisors and received salary increases each year based on his work performance.

17. Marc was a successful employee at Scottsdale with an excellent record of performance. He received many accolades from his supervisors for his outstanding work and solid effort on behalf of the City of Scottsdale.

18. Marc was diagnosed with a disability, depression, over twenty-years ago.

19. Marc's disability constitutes a disability under the ADA because amongst other things he suffers depression, anxiety and bi-polar disorder which renders him substantially limited in several major life activities including but not limited to sleeping, eating, interacting with others, caring for oneself, learning, performing manual tasks, speaking, concentrating, thinking and communicating.

20. Marc is a qualified individual with a disability within the meaning of the ADA because he is otherwise qualified for his position with Defendant and was able to perform the essential functions of his position as a Liability Adjuster with or without accommodation.

21. Marc is a qualified individual with a disability because he has a record of disability within the meaning of the ADA.

22. Marc initially informed his supervisor, Katherine Callaway; Director Risk Management ("Director Callaway") that he had a disability sometime in 2015: he specifically told her that he suffered from depression and anxiety issues. Over the years they discussed his disabilities on numerous occasions.

23. In May 2019, Marc spoke with Director Callaway and requested a leave of absence because of his disability. He told her that as a result of his disability, depression, he was having problems coping and sleeping and was afraid his health would reflect negatively on him at work. Director Callaway told Marc he could take vacation or sick leave: she did not mention he was entitled to leave pursuant to the FMLA or the ADA. He told her that he wanted to take a "medical leave of absence." Director Callaway responded "I don't know what to tell you."

24. In mid-July 2019, Marc informed Director Callaway that he continued to experience problems with his disability and requested he be excused from attending a pre-mediation meeting that day. Director Callaway declined his request and directed Marc to attend the meeting. She suggested he take something to calm his anxiety. When asked questions at the meeting, as a result of his disability, Marc felt anxious and fearful but responded.

25. On or about July 22, 2019, Marc was called into a meeting with Director Callaway who stated that Joe Padilla, Acting City Attorney was unhappy with Marc's tone at the pre-mediation meeting. In response to Marc questioning if he was being terminated, Director Callaway respond "no it's just a warning from Joe." Marc again asked for an accommodation for his disability: that he no longer be required to provide an opinion on

settlement values because he had no authority and the acting City Attorney was not happy with his expressed opinions. Marc explained that the conflict triggered his anxiety and his depression. Again, Ms. Callaway declined his request for accommodation.

26. On or about July 29, 2019, Marc went to Sue Sola, Human Resource and with tears in his eyes told her he was emotionally compromised as his health issues were weighing on him and he was very concerned about a sore throat he had experienced for several months and it was triggering his depression. He told her he had suffered from depression and anxiety issues all of his life and that Director Callaway was aware of the fact he suffered from depression and anxiety. Sola suggested Marc leave for the day. Marc told her he felt he needed a leave of absence but was concerned about who would perform his job duties if he took sick leave. He also told Sola he was afraid that he would be terminated if he took a leave of absence because there was no one to perform his job duties while he was on leave. He specifically asked her how he could take a leave of absence and how long he could take a leave of absence without losing his job. Sola responded that PTO was at his bosses' discretion or he could take sick leave. If he wanted to use FMLA he would have to have a doctor's note and call the FMLA representative. Marc told her he was looking for a psychiatrist to help him.

27. On or about August 27, 2019, Director Callaway called Marc into a meeting and informed him that earlier (same day) a co-worker, Jennifer Medvec said "Marc leaned on her when he was depressed and blamed her for not finding Marc a psychiatrist." Director Callaway also said Medvec said he was suicidal and was going to kill himself and also said he was going to kill himself several months earlier.

28. Marc was stunned by the false accusation and had a sinking emotional reaction including grabbing his chest because he experienced a sudden sharp spike of pain in his chest. He denied that he told Medvec he planned to kill himself that day or at any time he worked for the City of Scottsdale.

29. In an effort not to embarrass Medvec and not to exacerbate the matter further he did not tell Director Callaway that Medvec was furious with him about a non-

- 5 -

work related matter. Specifically, earlier that day, Marc learned Medvec was angry at him to the point of being enraged as she thought Marc was responsible for action taken against her by the State of Arizona.

30. He did inform Director Callaway that Medvec had previously threatened to commit suicide and in fact leaned on him regarding some of her emotional issues. He also informed Director Callaway that on more than one occasion he heard Medvec crying in her office and throwing fits of anger. He told Director Callaway that on many occasions he tried to cheer Medvec up and had also asked another employee to help cheer her up.

31. During their meeting on August 27, 2020 Marc informed Director Callaway that he was continuing to seek a psychiatrist but was having trouble finding one that would take his insurance.

32. On September 3, 2020 Marc met with a psychiatrist who diagnosed him with dysthymic disorder and prescribed medication. He had informed Director Callaway that he had scheduled the appointment prior to meeting with the psychiatrist. He also informed Director Callaway that he had another appointment on September 9, 2019.

33. On September 9, 2020 Marc was called into a meeting with Sue Sola and Joe Padilla who handed Marc a letter that stated Marc was being terminated because Scottsdale had "lost confidence in him." They refused to elaborate further. Padilla left the room.

34. Sherry Scott, current City Attorney entered the room with severance paperwork offering Marc the option to resign his employment. Marc told her about his disability, specifically that he suffered from depression disorder, his requests for reasonable accommodations and leave. He also told her that Director Callaway was aware of his disability. Scott responded by asking why he didn't inform her of the problem earlier and left the room stating "I need to talk to Joe [Padilla] about this." She returned approximately one minute later stating that "Joe didn't change his mind."

35. Marc again requested a leave of absence to which Sola, who was still in the room, responded that she had explained FMLA to him and that he failed to pursue it. He

- 6 -

1 responded that he was pursing FMLA by getting a doctor's note and then he was going to apply for leave.

36. Scottsdale used the erratic conduct alleged by Medvec as a pretext to terminate Marc after his five years of loyalty and successful employment with Scottsdale.

37. No one at Scottsdale informed Marc that his job was in jeopardy prior to his termination, for any reason.

38. Scottsdale's enforcement of its termination policies was harsh, arbitrary and punitive as applied to Marc because of his repeated request for reasonable accommodations pursuant to the ADA and request for leave under the FMLA.

39. Scottsdale's articulated reasons for terminating Marc's employment are illogical, false, pre-textual and contradicted by Defendant's knowledge of Marc's disability and excellent work performance.

40. Prior to Marc's termination by Scottsdale, no one at Scottsdale asked Marc to submit to a medical examination by a Scottsdale approved physician regarding his ability to work nor did it make any inquiry regarding his disability despite the fact that he told his superiors that he needed time off to deal with his disability and that he was having problems coping.

41. Scottsdale intentionally and willfully engaged in unlawful employment practices against Marc, including intentionally discriminating against him and terminating his employment on account of his disability, serious medical condition and because he exercised his rights by requesting medical leave regarding his disability.

42. The effect of the practices complained of herein above has been to deprive Marc Fredrics of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability and/or perceived disability.

43. The unlawful employment practices complained of above were intentional.

**Count I**
**American's With Disabilities Act**
**(Discrimination, failure to accommodate and retaliation)**

44. Marc hereby repleads and incorporates all allegations set forth above.

45. Marc suffers from a condition which renders him substantially limited in several major life activities, including sleeping, eating, interacting with others, caring for oneself, learning, speaking, concentrating, thinking and communicating.

46. Scottsdale discriminated against Marc and refused to reasonably accommodate him because of his disability and/or perceived disability in violation of Title I of the ADA, Sections 102(a) and (b), and Title V of the ADA, Sections 503(a) and (b), 42 U.S.C. §§ 12112(a) and (b), and § 12203(a) and (b) by:

> (a) denying and interfering with Marc's employment opportunities based on his need for reasonable accommodation and request for leave pursuant to the ADA and FMLA;
>
> (b) asserting Marc was terminated due to inappropriate behavior at work as a pretext to guise its unlawful actions; and
>
> (c) terminating Marc's employment because of his disability and in retaliation for his request for reasonable accommodation and FMLA leave.

47. Defendant's refusal to provide Marc with the requested reasonable accommodation flies in the face of the highly individualized, case-by-case assessment required by Scottsdale's policies, alleged practices and the ADA.

48. Marc's had a qualifying disability and/or was perceived by Defendant as having a disability and likely to need future leave to attend to his disability.

49. Scottsdale disregarded Marc's request for a reasonable accommodation and failed to engage in the interactive process as required by the ADA to determine an effective reasonable accommodation for Marc's disability.

50. Marc engaged in protected conduct under the ADA, including but not limited to exercising his right to request leave as a reasonable accommodation for his disability.

51. Based on the foregoing, Scottsdale is liable for retaliation in violation of the ADA.

52. The effect of the practices complained of herein above has been to deprive Marc of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability and/or perceived disability.

53. As a direct and proximate result of Scottsdale's actions and inaction as described herein, Marc has suffered and continues to suffer damages including, but not limited to, consequential economic damages including back pay, front pay, compensatory damages, benefits, pain and suffering, mental anguish, stress, distress and loss of enjoyment of life.

54. Scottsdale's conduct as outlined above was in reckless disregard and/or callous indifference of Marc's federally protected rights.

55. City of Scottsdale did not undertake any written analysis to determine the impact of Marc's request for accommodation.

56. City of Scottsdale failed to initiate or engage in the interactive process with Marc or his physician to identify the nature of his disability, limitations resulting from his disabilities and potential accommodations that could overcome those limitations.

57. As a direct and proximate result of City of Scottsdale's willful, intentional, malicious, and unlawful failure to accommodate Marc's disability, and/or perceived disability. Marc suffered and continues to suffer damages including, but not limited to, consequential and economic damages (loss of pay and benefits), pain and suffering, stress, anxiety, ordeal, embarrassment, loss of enjoyment of life, emotional distress, and other compensation in amounts to be proven at trial.

## Count II
### FMLA – Interference with, Restraint of and Denial of Rights

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the paragraphs above.

59. The FMLA provides that eligible employees are entitled to take up to twelve weeks of leave in any twelve-month period to care for treatment of a serious health condition. 29 U.S.C. § 2612(a); 29 C.F.R. § 825.100(a). During such a leave, the

1 employer is required to maintain the employee's health benefits. 29 U.S.C. § 2614(c)(1); 29 C.F.R. § 825.100(b). Upon return from such a leave, the employee is entitled to be restored to the same or an equivalent position that the employee held when the leave commenced. 29 U.S.C. § 2614(a); 29 C.F.R. § 825.100(c).

60. The FMLA also provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter [of the FMLA]." 29 U.S.C. § 2615(a)(1).

61. Defendant willfully interfered with, restrained, and/or denied Marc's exercise of his right to FMLA leave after he provided Defendant with notice of his need for leave by fabricating a reason to terminate his employment because he sought leave pursuant to the FMLA.

62. As a direct and proximate result of Defendant's willful, intentional, malicious, and unlawful termination of his employment, Marc lost his salary, employment benefits, and other compensation, in amounts to be proven at trial.

63. As a result of Defendant's unlawful actions, which were not in good faith, Plaintiff is entitled to liquidated damages under 29 U.S.C. §§ 2617(a)(1)(A)(iii), in an amount to be proven at trial.

**Count III**
**(FMLA-Unlawful Discharge and Discrimination Retaliation)**

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs above.

65. The FMLA provides that eligible employees are entitled to take up to twelve weeks of leave in any twelve-month period if they have a serious health condition. 29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 825.100(a). During such a leave, the employer is required to maintain the employee's health benefits. 29 U.S.C. § 2614(c)(1); 29 C.F.R. § 100(b). Upon return from such a leave, the employee is entitled to be restored to the same or an equivalent position that the employee held when the leave commenced. 29 U.S.C. § 2614(a); 29 C.F.R. § 825.100(c).

Kirtley Wells Law Office
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
(602) 264-7424

66.     The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter [of the FMLA]." 29 U.S.C. § 2615(a)(2).

67.     Defendant willfully terminated Plaintiff when and because he informed it that he required leave under the FMLA.

68.     As a direct and proximate result of Defendant's willful, intentional, malicious, and unlawful termination of his employment, Plaintiff lost his salary, employment benefits, and other compensation, in amounts to be proven at trial.

69.     As a result of Defendant's action, which were not in good faith, Plaintiff is entitled to liquidated damages under 29 U.S.C. §§ 2617(a)(1)(A)(iii), in an amount to be proven at trial.

**Count IV**
**(Intentional and Negligent Infliction of Emotional Distress)**

70.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs above.

71.     Defendant's actions and/or omissions negligently and/or intentionally inflicted emotional distress upon Plaintiff, including such things as (amongst others and without limitation) their callous treatment and/or their use of pretext to terminate Marc and attack his character and reputation branding him dangerous to himself and others while knowing he suffered from mental disabilities.

72.     Defendant has no lawful purpose for their conduct and knew, or reasonably should have known, that their actions violated Plaintiff federal civil rights.

73.     Defendant's objective was to either cause Marc Fredrics emotional distress or they were aware of and disregarded the likelihood that their actions would result in emotional distress.

74.     Defendant's acts and omissions were intentional and caused Marc emotional distress and/or were recklessly in disregard of the near certainty that emotional distress would result from their violation of his federally protected rights.

75.     Defendant's acts and omissions constitute negligent, reckless, and/or intentional infliction of emotional distress.

76.     As a direct and proximate result of Defendant's intentional and negligent infliction of emotional distress, Marc has suffered damages including severe emotional distress including embarrassment, humiliation, and injury to reputation, mental anguish and harm in an amount to be proven at trial.

## **Jury Demand**

77.     Marc hereby demands a jury trial.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Grant a permanent injunction enjoining City of Scottsdale and its officers, successors, assigns and all persons in active concerns or participation with them, from engaging in any employment practice which discriminates on the basis of disability and those which violate the ADA and FMLA;

B.     Order City of Scottsdale to institute and carry out policies, practices and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices;

C.     Order City of Scottsdale to make Marc Fredrics' whole by providing appropriate back pay and lost benefits with prejudgment interest, and other compensation including compensatory damages denied or lost to Plaintiff by reason of Defendant's violations of the ADA and FMLA, in amounts to be proven at trial;

D.     Order affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to, the rightful placement of Marc Fredrics (reinstatement) and/or front pay in amount to be proven at trial;

E.     Order City of Scottsdale to make Marc Fredrics whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including damages for emotional pain and suffering such

as anguish, stress, distress, humiliation, embarrassment, anxiety and medical expenses, ordeal, in amounts to be determined at trial;

F. Order Defendant to pay Marc Fredrics for it intentional and negligent infliction of emotion distress;

G. Order Defendant to pay Plaintiff for an additional amount as liquidated damages equal to the wages, salary, employment benefits, pension benefits, and other compensation denied or lost to Plaintiff by reason of Defendant's violations of the FMLA, in an amount to be proven at trial;

H. Award Marc his costs, attorney's fees and pre-judgment and post judgment interest.

I. Order Defendant City of Scottsdale to pay for economic and non-economic damages pursuant to applicable Arizona and federal law;

J. For an amount to compensate Plaintiff for increased taxes he will have to pay as result of receiving compensation for future losses in a lump sum;

K. Cost and attorneys' fees as to the causes of action, claim and theories of relief alleged herein under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988; and

L. Grant such further relief as this Court deems necessary and proper.

DATED this 1st, day of January 2021.

                                  Kirtley Wells Law Office

                                  /s/Trisha Kirtley
                                  Trisha Kirtley
                                  4742 N. 24th Street Ste. 300
                                  Phoenix, AZ 85016